**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **NUCOR CORPORATION,**<br><br>                              **Plaintiff,**<br>          **v.**<br><br>**UNITED STATES,**<br><br>                              **Defendant.** | **Before: Hon. _____**<br>                  **Judge**<br><br>**Court No. 23-00058** |

## COMPLAINT

Plaintiff Nucor Corporation ("Plaintiff" or "Nucor"), by and through its attorneys, alleges and states as follows:

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1.       Plaintiff brings this Complaint to contest portions of the U.S. Department of Commerce's ("Commerce") final results of the 2020 administrative review of the countervailing duty order on *Certain Corrosion-Resistant Steel Products from the Republic of Korea*.  The final results were issued on February 1, 2023 and were published in the *Federal Register* on February 7, 2023.  *See* Issues and Decision Memorandum accompanying *Certain Corrosion-Resistant Steel Products from the Republic of Korea*, 88 Fed. Reg. 7,946 (Dep't Commerce Feb. 7, 2023) (final results and partial rescission of countervailing duty admin. rev.; 2020) ("Final Decision Memo").

## JURISDICTION

2.       The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (B)(iii).

Ct. No. 23-00058

## STANDING

3.      Plaintiff is a U.S. producer of subject corrosion-resistant steel products, an interested party within the meaning of 19 U.S.C. § 1677(9)(C), and a party to the administrative review in connection with which this matter arises.  Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4.      Plaintiff commenced this action by filing a Summons on March 9, 2022, within 30 days after the publication of the Final Results in the *Federal Register*.  Summons (Mar. 9, 2023), ECF No. 1.  Plaintiff is filing this Complaint within 30 days after filing the Summons. The Summons and Complaint, therefore, are timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(i)(I) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5.      On June 2, 2016, Commerce published its final determination in the countervailing duty investigation of *Certain Corrosion-Resistant Steel Products from the Republic of Korea*.  *Certain Corrosion-Resistant Steel Products from the Republic of Korea*, 81 Fed. Reg. 35,310 (Dep't Commerce June 2, 2016) (final affirm. deter., and final critical circumstances deter., in part).  On July 25, 2016, Commerce published the countervailing duty order in the *Federal Register*.  *Certain Corrosion-Resistant Steel Products from India, Italy, the Republic of Korea and the People's Republic of China*, 81 Fed. Reg. 48,387 (Dep't Commerce July 25, 2016) (countervailing duty order).  Commerce initiated the administrative review subject to this Complaint on September 7, 2021, covering the period of review ("POR") of January 1, 2020 to December 31, 2020.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 50,034 (Dep't Commerce Sept. 7, 2021).

Ct. No. 23-00058

6.      Commerce issued questionnaires regarding the subsidy programs under review to the Government of Korea ("GOK") and the mandatory respondents Hyundai Steel Company ("Hyundai Steel") and KG Dongbu Steel Co., Ltd. ("KG Dongbu"), who provided responses on November 29, 2021.  Letter from Yoon & Yang to Sec'y of Commerce, re: *Administrative Review on Certain Corrosion-Resistant Steel Products from the Republic of Korea: Response to the Initial Questionnaire* (Nov. 29, 2021) ("GOK IQR"); Letter from Morris, Manning & Martin, LLP to Sec'y of Commerce, re: *Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Dongbu's Initial Questionnaire Response* (Nov. 29, 2021) ("KG Dongbu IQR"); Letter from Morris, Manning & Martin, LLP to Sec'y of Commerce, re: *Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Hyundai Steel's Initial Questionnaire Response* (Nov. 29, 2021) ("Hyundai Steel IQR").

7.      In its initial questionnaire response, the GOK described the structure of the Korean electricity market and the operations of the state-owned electric utility, the Korea Electric Power Corporation ("KEPCO").  It explained that "KEPCO is the exclusive supplier of electricity in Korea," but that "KEPCO itself does not generate electricity."  GOK IQR at 30-31. Instead, KEPCO "purchases electricity from generators" through a market called the Korea Power Exchange ("KPX") "and transmits and distributes {the} electricity to end consumers."  *Id.* The GOK provided information showing that most electricity is generated by six generators that are wholly owned and consolidated KEPCO subsidiaries, and that the KPX in turn is wholly owned by KEPCO and its six generation subsidiaries.  *Id.* at 31-32, Exhibit E-2 (p. 35).  The GOK further explained that the price at which KEPCO purchases electricity from generators through the KPX is determined by a formula consisting of a variable cost component, a fixed cost component, and an "adjusted coefficient factor," which "prevent{s} KEPCO's

overpayment" to certain types of generators based on fuel type.  *Id.* at 46-48.  Each of these elements of the electricity price is determined by a "Cost Evaluation Committee" within the KPX and not by the generators themselves.  *Id.*

8.      The GOK also provided data showing KEPCO's cost of supply and sales revenue for electricity during the POR.   Letter from Yoon & Yang to Sec'y of Commerce, re: *Countervailing Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea: Response to the First Supplemental Questionnaire* (Feb. 18, 2022) at 3, Exhibit E-9.1.  It explained KEPCO's costs "include{d} the payment for the purchase of electricity, labor costs, grid maintenance fee" and various taxes and fees that were "not related to the sale of electricity . . . ."  GOK IQR at 38.  With respect to sales prices, the GOK explained that the mandatory respondents paid for electricity based on industrial electricity prices in a generally applicable electricity tariff schedule with different prices for on-peak, mid-peak, and off-peak demand periods.  *Id.* at 38-39, 44-45, Exhibit E-10.  The mandatory respondents reported the monthly volume and value of their electricity consumption during each of these demand periods.  Hyundai Steel IQR at Exhibit J-2; KG Dongbu IQR at Exhibit J-2.

9.      Commenting on the GOK's questionnaire responses, Nucor pointed out that KEPCO's cost data was based KEPCO's cost of purchasing electricity from generators through the KPX market based not the actual costs of generating electricity, but based on costs assigned to generators by a "Cost Evaluation Committee" within the KPX.  Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Corrosion-Resistant Steel Products from South Korea: Comments on the Government of Korea's Initial Questionnaire Response* (Dec. 13, 2021) at 7-8.  Nucor thus asked Commerce to collect additional information to confirm that price that KEPCO paid to acquire electricity through the KPX accurately reflected the actual cost of electricity generation

Ct. No. 23-00058

and supply.  *Id.*  Commerce did not attempt to collect additional information regarding the actual costs of electricity generation or the cost assignments of the KPX Cost Evaluation Committee. In subsequent comments, Nucor reiterated this request in light of information showing that KEPCO's generation subsidiaries were unprofitable during the POR, suggesting that the KPX pricing system did not appear to reflect the actual cost of generation and supply.  Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Corrosion-Resistant Steel Products from South Korea: Comments on the Korean Government's Supplemental Questionnaire Response* (Mar. 7, 2022).

10.     On December 16, 2021, Nucor timely filed a request that Commerce conduct verification of the questionnaire responses of KG Dongbu, Hyundai Steel, and the GOK.  Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Corrosion-Resistant Steel Products from the Republic of Korea: Request for Verification* (Dec. 16, 2021).  Nucor pointed out that no verification had been conducted in the previous two administrative reviews and that the Department's rules thus required verification upon timely request from a domestic interested party.  *Id.* (citing 19 C.F.R. § 351.307(b)(1)(v)).

11.     Commerce issued the preliminary results of the administrative review on August 1, 2022 and published them in the Federal Register on August 5, 2022.  Preliminary Decision Memorandum accompanying *Certain Corrosion-Resistant Steel Products from the Republic of Korea*, 87 Fed. Reg. 47,973 (Dep't Commerce Aug. 5, 2022) (prelim. results and partial rescission of the countervailing duty admin. rev., 2020).  Applying a "tier-three" benefit methodology, Commerce preliminarily determined that KEPCO supplied electricity to the mandatory respondents for less than adequate remuneration under certain tariff classes but calculated a non-measurable benefit amount.  *Id.* at 30-36.

Ct. No. 23-00058

12.     With respect to the price at which KEPCO purchased electricity through the KPX, Commerce reasoned that in prior administrative reviews, it had "examined KPX, in the context of an upstream subsidy allegation," and found that there was no benefit conferred by "KPX's prices of the {generation companies'} electricity to KEPCO . . . ." *Id.* at 34.  It also found that "the GOK provided financial statements for the {generation companies}" and determined "that each of the six {generation companies} recovered its costs." *Id.* at 35.

13.     With respect to the prices at which KEPCO sold electricity to end users, including the respondents, Commerce "preliminarily determine{d} that KEPCO does have a pricing mechanism in place that is based on market principles," and that KG Dongbu and Hyundai Steel purchased electricity in tariff classifications that "recovered costs and provided a rate of return during the POR according to the KEPCO cost data." *Id.* at 36.  For this analysis, Commerce relied on KEPCO's overall cost recovery rates based on total unit cost of supply and total unit revenues on all sales to all users in the relevant tariff classification. *Id.*

14.     On June 28, 2022, Commerce issued verification preparedness questionnaires to KG Dongbu and Hyundai Steel, who provided responses on July 5, 2022.  Letter from Morris, Manning, and Martin, LLP to Sec'y of Commerce, re: *Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: KG Dongbu Steel's Verification Preparedness Response* (July 5, 2022); Letter from Morris, Manning, and Martin, LLP to Sec'y of Commerce, re: *Corrosion-Resistant Steel Products from Korea, Case No. C-580-879: Hyundai Steel's Verification Preparedness Response* (July 6, 2022).  Commerce did not issue a similar questionnaire to the GOK.

15.     Commerce issued verification agendas for KG Dongbu and Hyundai Steel on September 21, 2022.  Letter from Robert Palmer, Program Manager, AD/CVD Operations,

Ct. No. 23-00058

Off. VIII, Enf't and Compliance, to Hyundai Steel Company, re: *Countervailing Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea: Verification of Hyundai Steel Company's Questionnaire Responses* (Sept. 21, 2022); Letter from Robert Palmer, Program Manager, AD/CVD Operations, Off. VIII, Enf't and Compliance, to KG Dongbu Steel Co., Ltd., re: *Countervailing Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea; Verification of KG Dongbu Steel Co., Ltd.'s Questionnaire Responses* (Sept. 21, 2022). Commerce did not issue a verification agenda for the GOK.

      16.    Commerce conducted on-site verification of KG Dongbu's questionnaire responses from October 4, 2022 through October 5, 2022 and issued its verification report regarding KG Dongbu on December 6, 2022. Memorandum from Jinny Ahn, Zachariah Hall, Int'l Trade Compliance Analysts, Off. VIII, AD/CVD Operations, through Robert Palmer, Program Manager, Off. VIII, AD/CVD Operations, to The File, re: *Countervailing Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea; 2020: Verification of the Questionnaire Responses of KG Dongbu Steel Co., Ltd.* (Dec. 6, 2022). Commerce conducted on-site verification of Hyundai Steel's questionnaire responses from October 6, 2022 through October 7, 2022 and issued its verification report regarding Hyundai Steel on December 6, 2022. Memorandum from Jinny Ahn, Zachariah Hall, Int'l Trade Compliance Analysts, Off. VIII, AD/CVD Operations, through Robert Palmer, Program Manager, Off. VIII, AD/CVD Operations, to The File, re: *Countervailing Duty Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea; 2020: Verification of the Questionnaire Responses of Hyundai Steel Company* (Dec. 6, 2022). Commerce did not conduct verification of the GOK's questionnaire responses.

Ct. No. 23-00058

17.     Nucor filed its case brief on December 16, 2022, arguing that Commerce's methodology for determining the benefit conferred by the provision of electricity for less than adequate remuneration was improper and should be modified for the final determination.  Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Corrosion-Resistant Steel Products from the Republic of Korea: Case Brief* (Dec. 16, 2022).

18.     First, Nucor noted the evidentiary flaws with the cost data on which Commerce relied and argued that it was improper to presume that the data reflected market-based costs.  *Id.* at 6-7.  Because the record was closed and Commerce had decided to rely on KEPCO's cost data as reported by the GOK, however, Nucor argued that this data nevertheless showed that a benefit was conferred.  Nucor argued that the tier three standard for electricity programs as previously articulated by Commerce is that a benefit is conferred "if the tariff charged to the respondent does not cover 'cost of production' plus a 'profitable return on investment' . . . ."  *Id.* at 9-10 (emphasis added).  Nucor thus argued that Commerce erred by finding that no benefit was conferred under a particular tariff class when KEPCO covered its costs inclusive of investment return on all sales to all customers in a tariff classification in the aggregate.  *Id.* at 10-11.  Nucor argued that basing the benefit analysis on the government supplier's total revenues on a broader category of sales rather than on the prices actually paid by the respondents under review was contrary to the statute, Commerce regulations, and court and agency precedent.  *Id.* at 10-12.

19.     Nucor argued further that Commerce's failure to conduct verification of the GOK's questionnaire responses rendered the final determination unlawful.  *Id.* at 13-15.  Nucor argued that Commerce's regulations require verification if an interested party timely requests verification and if verification has not been conducted in the two prior segments of the

Ct. No. 23-00058

proceeding.  *Id.*  Because both of these conditions were satisfied, Nucor argued that Commerce's

failure to verify the GOK's responses was unlawful.

20.     Commerce issued the final results on February 1, 2023 and published them in the

Federal Register on February 7, 2023.  Final Decision Memo.

21.     Commerce continued to determine whether the provision of electricity for less

than adequate remuneration conferred a benefit based on KEPCO's costs and revenues in the

aggregate under the relevant tariff classes.  *Id.* at 15-19.  Commerce reasoned that Nucor's

arguments were "inapposite to a tier-three analysis," and that "an evaluation of a government

supplier's income and costs and whether the income covers costs and profit . . . has consistently

been part of our analysis when assessing whether KEPCO's pricing is consistent with market

principles and has been found to be within the bounds of what {the regulation} proposes."  *Id.*

at 16.

22.     According to Commerce, its "tier-three methodology has been to first determine

whether the prices are market-based.  Where prices are set in accordance with market principles

and, thus, are at fair value, we determine no benefit is conferred; where they are not market-

based (*i.e.*, they have not recovered costs plus profit), we determine a price that would be

market-based and compare that to what was actually paid using a benchmark."  *Id.* at 18.

Commerce also determined that the KEPCO cost data as reported by the GOK reflected market

prices because "the wholesale and retail pricing is based on price-setting methodologies that aim

to ensure companies in the chain are able to cover their costs, as well as a rate of profit."  *Id.* at

17-18.

23.     With respect to its decision not to verify the responses of the GOK, Commerce

explained that "complete verification . . . was not within Commerce's ability to perform given its

Ct. No. 23-00058

resource constraints," so it "exercised its discretion and identified certain respondents and subsidy programs for verification that would most likely have a significant effect on the results of the administrative review . . . ."  *Id.* at 42.  Citing its verification of the GOK in other cases, "Commerce determined that verification of the GOK was not necessary in this review" because "{d}oing so would prevent Commerce from focusing its limited resources on the verification of POR-specific benefit information submitted on the record . . . ."  *Id.* at 42-43.

24.    Based in part on the above determinations, Commerce calculated final subsidy rates of 0.27 percent, or *de minimis*, for Hyundai Steel, 9.47 percent for KG Dongbu, and 9.47 percent for the non-selected companies.  *Certain Corrosion-Resistant Steel Products from the Republic of Korea*, 88 Fed. Reg. 7,946 (Dep't Commerce Feb. 7, 2023) (final results and partial rescission of countervailing duty admin rev.; 2020).  This appeal followed.

### CLAIMS AND BASES FOR RELIEF

### Count I

25.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 23.

26.    Commerce's determination that the provision of electricity for less than adequate remuneration conferred no benefit was unsupported by substantial evidence and otherwise not in accordance with law.

27.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 25.

28.    Commerce's decision not to verify the questionnaire responses of the GOK was unsupported by substantial evidence and otherwise not in accordance with law.

Ct. No. 23-00058

## <u>REQUEST FOR JUDGMENT AND RELIEF</u>

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

1)      Hold that Commerce's final results in the 2020 countervailing duty administrative review of *Certain Corrosion-Resistant Steel Products from the Republic of Korea* are not supported by substantial evidence on the record and are otherwise not in accordance with law; and

2)      Remand the Final Results to Commerce for disposition consistent with the Court's final opinion.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Tessa V. Capeloto, Esq.
Adam M. Teslik, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Date:  April 7, 2023

## <u>CERTIFICATE OF SERVICE</u>

PUBLIC SERVICE

### *Nucor Corporation v. United States*
### Court No. 23-00058

I certify that a copy of this public submission was served on the following parties, via certified mail, first class international mail (*), and electronic service, on April 7, 2023.

/s/ Adam M. Teslik

Roger B. Schagrin, Esq.
**Schagrin Associates**
900 7th Street, NW
Suite 500
Washington, DC 20001

Thomas M. Beline, Esq.
**Cassidy Levy Kent (USA) LLP**
900 19th Street, NW
Suite 400
Washington, DC 20006

Stephen P. Vaughn, Esq.
**King & Spalding LLP**
1700 Pennsylvania Avenue, NW
Washington, DC 20006

*Sungbum Lee
**Yoon & Yang LLC**
34th Floor, ASEM Tower
517 Yeongdongdaero
Gangnamgu, Seoul
South Korea

Elizabeth A. Speck
Civil Division, Commercial Litigation Branch
**U.S. Department of Justice**
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

Brady W. Mills, Esq.
**Morris, Manning & Martin, LLP**
1401 I Street, NW
Suite 600
Washington, DC 20005

Jeffrey M. Winton, Esq.
**Winton & Chapman PLLC**
1900 L Street, NW
Suite 611
Washington, DC 20036

Seokjoong Woo
**Embassy of the Republic of Korea**
2450 Massachusetts Avenue, NW
Washington, DC 20008

General Counsel
**U.S. Department of Commerce**
14th Street and Constitution Avenue, NW
Washington, DC 20230